**Antonio J. BROWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A05–0105–CR–178.**

Court of Appeals of Indiana.

Jan. 7, 2002.

Jon Aarstad, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Antonio J. Brown appeals the sentence he received following his conviction of two counts of Child Molesting,[1] both as class A felonies, and the finding that he was an habitual offender. Brown presents as the sole issue upon appeal the contention that his sentence is manifestly unreasonable.

We affirm.

The facts are that in the spring of 2000, Brown lived with Gwendoline Crowder, her seven-year-old daughter, A.C., and her son, D.C. Shortly before Easter, A.C. complained that she was not feeling well, so her mother took her to visit the doctor. Tests performed that day indicated that A.C. had contracted gonorrhea. Police were notified, and A.C. subsequently told Detective James Harpenau that Brown had molested her on at least four occasions that spring. Her description of those incidents revealed that they were similar in nature. While she was laying in bed at night, Brown would come into her room, tell her to be quiet, pull down her panties, get on top of her, put his penis between her legs, and move "up and down." *Appendix to Accompany Appellant's Brief* at 143.

Although A.C. reported that Brown molested her on at least four separate occasions, Brown was charged with only two counts of child molesting. On January 22, 2000, the morning of a hearing on Brown's motion to suppress, the State filed an information alleging that Brown was an habitual offender. The court decided to bifurcate the proceedings and to conduct a trial on the habitual offender charge at a later date. A bench trial was conducted on February 1, 2000 pertaining to the child molesting charges, after which Brown was

1. Ind.Code Ann. § 35–42–4–3(a)(1) (West Supp.2000).

found guilty as charged. Following a March 6, 2000 bench trial, the trial court determined that Brown was a habitual offender. At sentencing, the court found that the aggravating factors outweighed the mitigating factors and imposed the maximum sentence of 50 years for each of the convictions, one of which was enhanced by thirty years by virtue of Brown's habitual offender adjudication. Finally, the trial court ordered that the 50–and 80–year sentences be served consecutive to one another, for a total executed sentence of 130 years.

■ Upon appeal, Brown asserts that he is not the " 'very worst' of offenders [and] his aggregate sentence of 130 years, the maximum available to the sentencing court for his two class A felonies and adjudication as an habitual offender, which would keep him in prison until he is about 90, is manifestly unreasonable and should be reversed." Appellant's Brief at 9.

■ When we are called upon to review whether a sentence is manifestly unreasonable, the principles that guide us are well settled. At the outset, we are mindful the that trial court is vested with discretion in determining an appropriate sentence. *Bonds v. State*, 729 N.E.2d 1002 (Ind.2000). Article VII, Section 6 of the Indiana Constitution confers upon Indiana appellate courts the power to review and revise sentences "to the extent provided by rule." *See Redmon v. State*, 734 N.E.2d 1088 (Ind.Ct.App.2000). Revision of a criminal sentence authorized by statute is appropriate only where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Id.;* Ind. Appellate Rule 17(B).[2] "In determining whether a revision is war-

ranted, the issue is not whether, in our judgment, the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Peckinpaugh v. State*, 743 N.E.2d 1238, 1243 (Ind.Ct.App.2001), *trans. denied.* Finally, when reviewing a sentence for reasonableness, we are mindful of the principle that "the maximum sentence enhancement permitted by law ... should ... be reserved for the very worst offenses and offenders." *Buchanan v. State*, 699 N.E.2d 655, 657 (Ind.1998) (quoting *Bacher v. State*, 686 N.E.2d 791, 802 (Ind.1997)).

■ Brown received the maximum 50–year sentence for each of his A-felony convictions. If a trial court imposes an enhanced sentence, it must identify all of the significant aggravating and mitigating circumstances, state the specific reason why each circumstance is determined to be aggravating or mitigating, and articulate its evaluation and balancing of those circumstances. *Mayes v. State*, 744 N.E.2d 390 (Ind.2001). Even if the trial court fails to specifically articulate its reasons for enhancement, we will affirm if the record indicates that the court engaged in the evaluative processes and the sentence imposed was not manifestly unreasonable. *Id.*

In its sentencing statement, the court identified the following aggravating factors: (1) Brown posed "an extreme risk" for the commission of other offenses, *Transcript* at 170, (2) the nature and the circumstances of this crime were "extremely aggravated", *id.,* (3) the victim contracted a venereal disease as a result of the molestations, (4) there was more than one "very serious", *id.,* molestation incident, (5) Brown has a "very significant", *id.,* prior criminal history, including six

---

**2.** Under the new Indiana Rules of Appellate Procedure, the former App. R. 17(B) is now codified at App. R. 7(B).

felony and several misdemeanor convictions, (6) Brown admitted that he used illegal drugs every day, and (7) the victim will require psychological counseling for a significant period of time. The only mitigating circumstances identified by the court were Brown's limited intellectual capacity and history of psychiatric problems. Brown disputes the imposition of the maximum possible sentence by challenging the trial court's assessment of the severity of his criminal history, pointing out that Brown may not have known he had a sexually transmitted disease and A.C.'s gonorrhea "seems" to be treatable. Appellant's Brief at 11. Further, he argues that his were not among the very worst of child molesting offenses and thus not deserving of the harshest punishment.

We note that Brown does not challenge the adequacy of the sentencing statement, but instead the reasonableness of the sentence. For that reason, we need not necessarily concentrate on the statement itself. Rather, we will examine the aggravating and mitigating factors and determine whether the maximum sentence is "clearly, plainly, and obviously" unreasonable. *Peckinpaugh v. State*, 743 N.E.2d at 1243; *see also Carter v. State*, 711 N.E.2d 835 (Ind. 1999).

Generally, the court identified certain facts of these particular offenses as aggravating circumstances. Such is not improper. *See Miller v. State*, 720 N.E.2d 696 (Ind.1999) (the nature and circumstances of a crime may be legitimate aggravating factors). The statute under which Brown was convicted provides an upper age limit of less than fourteen years old. In this case, the child victim was only seven years old. This court has held that a court may consider extreme youth as an aggravating factor even where the age of the victim is an element of the offense. *See Kile v. State*, 729 N.E.2d 211, 214 (Ind.Ct.App.

2000) ("trial court did not unreasonably consider that neglect of a very young child is worse that [sic] the same behavior toward an older, more capable dependent") (quoting *Mallory v. State*, 563 N.E.2d 640, 648 (Ind.Ct.App.1990), *trans. denied*). Although the child molesting statute requires the victim to be under fourteen years of age, it does not require the victim to be of an age as young as A.C. was in this case. Moreover, we note that, as her mother's live-in boyfriend, Brown occupied a position of trust relative to the victim. Our supreme court has held that a live-in boyfriend is in a position of trust with regard to the children of his live-in girlfriend. *See, e.g., Martin v. State*, 535 N.E.2d 493 (Ind.1989); *Davies v. State*, 730 N.E.2d 726 (Ind.Ct.App.2000), *trans. denied, cert. denied*. Therefore, this too was a valid aggravating circumstance.

Although Brown was charged with two counts of child molesting, A.C. testified that there were as many as four incidents of molestation. The serial nature of the offenses committed against A.C. is a valid aggravating circumstance. *See Winters v. State*, 727 N.E.2d 758 (Ind.Ct.App.2000), *trans. denied*.

Brown infected A.C. with gonorrhea when he molested her. Notwithstanding Brown's argument that this is not a valid aggravating factor when the defendant does not know that he carries the disease, we deem this to be a valid aggravating circumstance in this case. *Cf. McCann v. State*, 749 N.E.2d 1116, 1120 (Ind.2001) ("pregnancy is similar to the infirmity or age of the victim in that the defendant's knowledge of these circumstances is not necessary for them to qualify as aggravating .... aggravating circumstances turn on the consequences to the victim as well as the culpability of the defendant").

We agree with the trial court's assessment of the nature and significance of

Brown's criminal history. Although only twenty-six years old at the time of the offenses, Brown had a lengthy criminal history, including at least six felony convictions, several misdemeanor convictions, and various juvenile offenses. Moreover, Brown admitted that he violates the drug laws of Indiana on a more or less daily basis. This continuous, long-term, pattern of criminal behavior that is perhaps escalating in severity indicates that Brown poses a significant threat to continue his criminal endeavors if not incarcerated.

Finally, we note that the record does not indicate that Brown has shown remorse for his attacks upon A.C. Lack of remorse is a valid aggravating factor. *See Sherwood v. State*, 749 N.E.2d 36 (Ind.2001).

The only mitigating factors identified by the court were Brown's somewhat diminished intellectual capacity and his "psychiatric problems".[3] *Appendix to Accompany Appellant's Brief* at 65. The court noted, however, that Brown's intellectual capacity was only mildly impaired. Thus, the trial court did not find these mitigators to be significant.

After reviewing the aforementioned factors, we conclude that the trial court did not err in determining that the aggravating factors significantly outweighed the mitigating factors. So much so, in fact, that we cannot say the imposition of the maximum sentence in this case was clearly, plainly, and obviously unreasonable. In reaching this conclusion, we briefly address Brown's argument that the maximum sentence should be reserved for the very worst offenses and offenders, and that this is not true here. There is a danger in applying this principle that is illustrated in the instant case. If we were to take this language literally, we would

reserve the maximum punishment for only the single most heinous offense. In order to determine whether an offense fits that description, we would be required to compare the facts of the case before us with either those of other cases that have been previously decided, or—more problematically—with hypothetical facts calculated to provide a "worst-case scenario" template against which the instant facts can be measured. If the latter were done, one could always envision a way in which the instant facts could be worse. In such case, the worst manifestation of any offense would be hypothetical, not real, and the maximum sentence would never be justified.

■ This leads us to conclude the following with respect to deciding whether a case is among the very worst offenses and a defendant among the very worst offenders, thus justifying the maximum sentence: We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.

Brown is a career criminal who shows no inclination to conform his behavior to the rules of society. In the matter before us, he repeatedly molested a seven-year-old child with whom he occupied a position of trust. During the course of the serial molestations, he infected the child with a venereal disease. There is no reason to believe that the molestations would have ended because they ceased only when the victim's disease was diagnosed. There is no evidence that Brown experienced remorse for his crimes. During the time of the molestations, Brown was involved in

---

**3.** The court mentioned "psychiatric problems" but did not elaborate upon the nature

or severity of those problems.

illegal drug usage. Although one can imagine facts that might be worse than those before us here, such does not lessen the severity of Brown's conduct or bolster the quality of his character by comparison. We are satisfied that the trial court's imposition of the maximum sentence on the facts of this case is not plainly, clearly, and obviously unreasonable.

Judgment affirmed.

BAKER, J., and ROBB, J., concur.